Jay Newman v. Commissioner.
Newman v. Commissioner
Docket No. 12593.
United States Tax Court
1948 Tax Ct. Memo LEXIS 168; 7 T.C.M. (CCH) 360; T.C.M. (RIA) 48099; June 10, 1948
*168 For several years prior to the taxable years petitioner and his brother, sister and mother owned and operated a business as a partnership under the name of West Tulsa Pipe and Supply Company. In 1941, petitioner purchased his brother's interest in the business and thereafter owned 13/18ths interest. On May 23, 1941, he gave his wife 6/18ths interest in the business. She had for several years prior thereto given full-time service to the business and was thoroughly familiar with its details. She continued to perform vital and essential services in the control and management of the business giving full time thereto at all times material herein. Held, that on and after May 23, 1941, she was a partner in the business owning a 6/18ths share of the net profits and this share is taxable to her and not to petitioner. On this issue the Commissioner is reversed. Harry H. Meisner, Esq., 2221 National Bank Bldg., Detroit, Mich., for the petitioner. Elmer L. Corbin, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioner's income tax for 1941 and 1943 of $2,718.64 and $25,204.96, respectively. *169 These deficiencies result from the addition by the Commissioner to the income reported by petitioner for the years 1941, 1942 and 1943, of $7,911.85, $24,370.20 and $28,147.50, respectively, as additional income from the business of the West Tulsa Pipe and Supply Company of Tulsa, Oklahoma. These adjustments were explained in the deficiency notice as follows: "(a) It is held that your wife, Mrs. Betty Newman, was not a member of the partnership of West Tulsa Pipe and Supply Company for Federal income tax purposes during the years 1941 to 1943, inclusive, and that the portion of the income of such partnership attributable to the interest claimed by Mrs. Newman is taxable to you as your separate income. * * *" In his determination of the net income of the West Tulsa Pipe and Supply Company for each of the years 1941, 1942 and 1943, the Commissioner allowed "a deduction of $1,800.00 for each of the years as salary paid to Mrs. Betty Newman." The deficiency notice also contains the following statement: "Your distributable share of the revised net income of the partnership for the respective years includes a salary allowance of $6,000.00 for each year plus 13/18ths of the remaining *170 net income for the period January 1, 1941 to September 9, 1943 and 15/18ths of the remaining income for the period September 10 to December 31, 1943." To the determination by the Commissioner of the deficiencies as aforesaid, the petitioner assigns error as follows: "(a) The Commissioner erred in his failure to find that Mrs. Betty Newman, Petitioner's wife, was a member of the partnership of West Tulsa Pipe and Supply Company for Federal Income Tax purposes during the years 1941, 1942 and 1943. "(b) The Commissioner erred by incorrectly assigning to the Petitioner portions of the income of the partnership of West Tulsa Pipe and Supply Company properly belonging to and duly reported by his wife, Mrs. Betty Newman, in the amounts of $7911.85 for the Year 1941, $24,370.20 for the Year 1942, and $28,147.56 for the Year 1943." Findings of Fact Petitioner Jay Newman is an individual, married and living with his wife in Tulsa, Oklahoma. He filed his Federal income tax returns for the calendar years 1941, 1942 and 1943 with the collector of internal revenue for the district of Oklahoma, Oklahoma City, Oklahoma. Petitioner married his wife, Betty Newman, in 1924. At the time of his *171 marriage he was working for his father in a grocery store. In 1930, petitioner's father and father-in-law were engaged as equal partners in a very small pipe supply business in the City of Tulsa, Oklahoma, known as Tulsa Pipe and Supply Company. In 1932, petitioner's father purchased his father-in-law's interest. In 1936, petitioner's father died and he, his mother, brother and sister became the owners of the business by amicable agreement in the following proportions: Jay Newman, the petitioner
9/18ths
Mary Newman, his mother
3/18ths
Emery Newman, his brother
4/18ths
Rea Rosenstein, his sister
2/18ths
On April 28, 1941, petitioner purchased his brother's 4/18ths interest which gave him an interest of 13/18ths in the business. Under date of May 23, 1941, petitioner entered into an agreement with his wife, Betty Newman, respecting ownership and operation of the West Tulsa Pipe and Supply Company. This agreement contains the following: "WHEREAS, the said Jay Newman desires that the said Betty Newman, his wife, own and control as her own separate, independent and sole property a portion of the ownership in the said West Tulsa Pipe and Supply Company, and
*172 "WHEREAS, it is necessary if this desire of the said Jay Newman be carried forward that an agreement be reached between the said Jay Newman and the said Betty Newman as to the operation and control of said business. "NOW THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES:" Paragraph 1 ratifies and confirms the gift of 6/18ths of the 13/18ths interest owned by petitioner in the West Tulsa Pipe and Supply Company to his wife, Betty Newman, in consideration of love and affection. The concluding part of paragraph 1 contains this language: "* * * That this gift is made with the clear understanding that the said gift is absolutely irrevocable, that it is not qualified and that nothing whatsoever which is contained in this agreement shall ever be construed as having the meaning or the effect of qualifying the ownership of the said Betty Newman in the said West Tulsa Pipe and Supply Company. That the purpose of the other provisions of this agreement is to vest control of the operation of the said West Tulsa Pipe and Supply Company and is to be restricted to the vesting of control only." Paragraph 2 of the agreement provides that: "2. * * * the said West Tulsa Pipe and Supply *173 Company has operated and shall continue to be operated by the said Jay Newman as if the same were his own property. That the parties further agree that the said business shall continue to be operated in the same manner by the said Jay Newman; that the said Betty Newman shall give aid and counsel to the said Jay Newman in the operation and control of said business. * * *" In paragraph 4 of the agreement it is provided that the petitioner should have absolute and sole power to hire and fire employees of the business and to fix the salaries to be paid to each and all of them. It is further provided that in addition he should have the right to fix a salary for himself, to be paid by the business, and to increase and decrease said salary at his own discretion, subject only to certain qualifications and restrictions. The restrictions are that the salary should not be disproportionate to time, effort, ingenuity, and value of Jay Newman to the business. In paragraph 5 it is provided that whether or not a dividend, and the amount thereof, shall be declared shall always be at the discretion of Jay Newman. It was agreed that the gift evidenced by the written agreement should be effective *174 from May 1, 1941. The agreement itself is incorporated herein by reference. Petitioner's wife was very active and devoted all of her time to the business. Her work was not confined to the office. She did much of the buying; handled the payroll; saw the men check in; she saw that shipments were sent out; adjusted complaints. Petitioner relied upon his wife to look after much of the detail of the business. She signed most of the checks during the years in question and carried on banking transactions. Petitioner gave little attention to these details. Mrs. Newman entered into, bought and sold contracts on her own responsibility, which were binding upon the business. She was in charge of the partnership's books of account and financial statements and all tax returns were prepared therefrom under her supervision. She prepared circulars listing inventories in conjunction with sales promotions in neighboring states; she made occasional business trips with petitioner to New York and other cities; she hired employees and helped look out for their welfare. She was in sole charge when her husband was away on his frequent trips in the field. Petitioner and his wife and the other two partners *175 had drawing accounts on the books to which were charged all the moneys withdrawn from the business and the shares of the business profits of each were credited thereto. The petitioner's mother and sister, though owning their respective portion in the business, did not participate in its operation or management. However, they were furnished with annual partnership financial statements disclosing each partner's net investment and drawings. Partnership Federal income tax returns were filed for the West Tulsa Pipe and Supply Company. The figures of taxable income, before making certain slight adjustments, were as follows: 1941
1942
1943
Jay Newman
7/18ths
$12,973
$33,336
$34,637
Betty Newman
6/18ths
5,977
26,431
29,667
Mary Newman
3/18ths
2,988
11,715
14,866
Rea Rosenstein
2/18ths
1,992
7,810
9,896
$23,931
$79,294
$89,066
Individual returns were duly filed for each of the above parties for the years 1941, 1942 and 1943 and returns were likewise filed for each of the above parties with the State of Oklahoma, in which each reported his share of the income. The above partners permitted their respective capital investments, *176 less their drawings, to accumulate from year to year for the use of the partnership business. During each of the years in question the Tax Commission of the State of Oklahoma issued to Jay Newman, Betty Newman, Mary Newman, and Rea Rosenstein, doing business as West Tulsa Pipe and Supply Company, a license to do business. Opinion BLACK, Judge: The net income of the West Tulsa Pipe and Supply Company for the taxable years involved is not in dispute. It filed partnership returns for each of the taxable years in which it reported the net income of the partnership and allocated it between the four partners. The Commissioner in his determination of the deficiencies made some adjustments to the "Income of partnership as shown on its returns." These particular adjustments are not contested. The adjustment which petitioner does contest is the addition to petitioner's income as reported on his return of the partnership income which was allocated to his wife, Betty, in the partnership returns. This presents the only issue for our decision. The applicable statutes are printed in the margin. [1]
*177 Both parties in their briefs cite a number of cases in support of their respective contentions. Some of these cases were decided prior to the Supreme Court's decisions in Commissioner v. Tower, 327 U.S. 280 and Lusthaus v. Commissioner, 327 U.S. 293 and are not now particularly helpful. The Supreme Court in Commissioner v. Tower, supra, among other things, said: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise perform vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182 * * *" See Francis A. Parker, 6 T.C. 974. In the instant case Mrs. Newman did not contribute to the partnership any capital originating with her. The capital which she contributed to the business was received as a gift from her husband, the petitioner. There is no question about that. Therefore, if capital were the only criterion she could not be recognized *178 as a partner under the Supreme Court's decision in the Tower case, supra. However, a capital contribution from a partner is not the only criterion. The Supreme Court, in the Tower case, said that a wife might become a partner with her husband in a business enterprise if she "substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things." Cf. Francis A. Parker, supra.We have found in our findings of fact that Mrs. Newman did "all of these things" for the West Tulsa Pipe and Supply Company. It is not necessary to repeat here what she did. These things are fully stated in our findings of fact and we think fulfill the requirements laid down by the Supreme Court in the Lusthaus and Tower cases. Mrs. Newman had been an active participant in the conduct of the business for a good many years and was thoroughly familiar with its every detail. In fact, in so far as the details of the business were concerned, she was the one who principally looked after them. The evidence makes that clear. Jay Newman concerned himself more with field work of the business. Mrs. Newman and her husband both testified *179 at the hearing and the substance of their testimony was to the effect that Mrs. Newman became dissatisfied at not having a direct ownership of part of the business in view of her active participation in its conduct and she insisted that she be taken in as a part owner. The result of these conversations was the execution of the written agreement of May 23, 1941, the substance of which we have detailed in our findings of fact. We doubt if this written agreement would be sufficient to form a common law partnership. However, we need not decide that point. The statutory definition of partnership as contained in section 3797 (a) (2), I.R.C. is much broader in its scope than the definition of a partnership at common law. It includes within its scope "a syndicate, group, pool, joint venture or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, * * *." There is no question in our mind that, from and after May 23, 1941, the business of West Tulsa Pipe and Supply Company was carried on by a group composed of petitioner, his wife Betty, his mother and his sister, with petitioner as the general *180 manager. The interest of each one of the group in the business was agreed upon and profits of the business were credited to the capital account of each member of the group in accordance with his or her fraction of ownership. Respondent has raised no question as to petitioner's mother's and sister's shares. He has recognized them as members of the group and has not taxed petitioner with their shares. In fact the Commissioner definitely recognized a partnership conducting West Tulsa Pipe and Supply Company during each of the taxable years but he does not recognize Betty Newman as a member of it. We see no reason why Betty should not be recognized as a member of the partnership on and after May 23, 1941, in view of the vital and essential services which she performed for the business during all the taxable years involved. Petitioner argues in his brief that the written agreement of May 23, 1941, simply recognized the interest which Betty already owned in the business and, therefore, she should be recognized as a member of the partnership throughout the year 1941, from January 1, 1941. We do not agree to this contention. Betty was definitely made a member of the group by written agreement *181 with her husband May 23, 1941, which was acquiesced in, at least by implied agreement, by the two other members of the group, petitioner's mother and his sister. It is from May 23, 1941, that Betty's interest in the partnership business must date and not sooner, under the evidence which we have in the record. Cf. Felix Zukaitis, 3 T.C. 814. Up until that time petitioner's interest in the business was 13/18ths and should be so recognized in a recomputation under Rule 50. Thereafter Betty was a partner as we have already decided with a 6/18ths interest and she should be so recognized. Also in his determination of the deficiencies, the Commissioner has stated "your distributable share of the revised net income of the partnership for the respective years includes a salary allowance of $6,000.00 for each year." Under the evidence which we have before us we see no reason to disturb that salary allowance made by the Commissioner and we do not disturb it. Also we do not disturb respondent's "Allowance of a deduction of $1,800.00 for each of the years as salary paid to Mrs. Betty Newman." We do hold, however, that upon a recomputation of the net income of the partnership under *182 Rule 50 that Betty Newman should be recognized as a partner on and after May 23, 1941, with a 6/18ths interest and her share of the net income of the partnership is taxable to her and not to petitioner. Cf. William Weizer v. Commissioner, 165 Fed. (2d) 744. The formula for figuring the amount of partnership net profits which is to be set aside to Betty Newman for the part of the year 1941 subsequent to May 23, 1941, which was used in Felix Zukaitis should be used here. Decision will be entered under Rule 50. Footnotes
1. Internal Revenue Code. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. SEC. 187. PARTNERSHIP RETURNS. Every partnership shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowed by this chapter and such other information for the purpose of carrying cut the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the net income if distributed and the amount of the distributive share of each individual. The return shall be sworn to by any one of the partners. SEC. 181. PARTNERSHIP NOT TAXABLE. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. SEC. 183. COMPUTATION OF PARTNERSHIP INCOME. (a) General Rule. - The net income of the partnership shall be computed in the same manner and on the same basis as in the case of an individual, except as provided in subsections (b) and (c).↩